### HAYWARD *v.* BATH.

Upon a hearing before commissioners relative to a new highway, evidence of the cost of new highways at remote times and places, is inadmissible.

A witness cannot be admitted to testify as to the amount of indebtedness of a town, by reference to a report of the auditors of the selectmen's accounts, which is not produced, though he may have personal knowledge of some of the debts.

A witness, accustomed to buy and sell lumber, and to haul it in the direction of the new road, cannot be asked over which road he intended to haul his lumber in case a new road is.built; his intention being immaterial.

The record of a discontinuance of a road formerly laid out nearly in the same direction and designed to accommodate the same travel as the road now proposed, is not admissible. It has not the conclusive effect of a judgment, because the parties and the subject matter are not the same. As the opinion of a former board of commissioners, it is not material.

It may be shown that the travel is now accommodated over a certain route, though it is not proved to be a public highway.

Where a road was laid out in 1814, and has been since used, notice and due award of damages or a waiver of them may be presumed.

UPON a motion to reject the report of the county commissioners, denying the application of Hayward and others for a highway in Bath and Landaff, the following exceptions were taken :

1. A lumber dealer, C. Whittier, accustomed to haul lumber over the existing roads, was asked by the defendants, who called him, by which road he intended to draw his lumber, in case the new road should be built ; and he answered, " that road being built, I should draw my lumber where I now do." Being asked his reason, he said the proposed road would be about three miles further to North Haverhill, a covered bridge to draw through, and a steep hill near Swift Water to go up.

2. To show the cost of building the road in question, L. Butler was permitted to testify, against the petitioners' objection, to the cost of building a road in Ryegate, Vt.,

in 1831, and of building a road from Lowell, Mass., to Manchester, in 1826. He described the routes, the nature of the land, and the manner of building; and stated the price paid for making different sections of the road, the cost of labor employed, and the difference between that and the cost of labor now at this place. When the petitioners' counsel was asked the ground of his objection, he replied: "We object to the evidence of the cost of the roads," and no other objection was stated.

3. A. Johnson, called by the defendants, testified that he resided and had a mill at McIndoes' Falls, Vt., thirteen miles from the end of the proposed road, and had been in the lumber business there ten years past. He stated the price he paid in particular instances during the past year, for drawing spruce and hemlock lumber from Bradley's Vale, Vt., ten miles, to St. Johnsbury, Vt., on the railroad, and the price then paid for sawing at McIndoes' Falls, and transporting it to Hartford and Springfield, and the price received for it in those markets—to show the business to be unprofitable. The only objection stated to this evidence was that it was too remote.

4. R. H. Noyes testified that he was a selectman of Landaff, and that the town was indebted in a sum not below $1,700. Upon cross-examination he said that he knew that certain roads had been built, and bridges repaired, but to what extent he could not say, and that was all he knew of the amount of the indebtedness, except from the report of the auditors, which was not produced. It was objected that the witness had no competent means of knowledge.

5. The defendants read in evidence—the petitioners objecting—copies of the records of a judgment of discontinuance, at the April term of the Court of Common Pleas in 1852, upon the several petitions of the towns of Bath and Landaff, of a highway laid out in 1848, upon the petition of S. Moody and another, over the general course

of the greater part of the route now in question, but with termini somewhat different, and over ground somewhat different from the route now proposed, but being substantially the same road. The defendants contended that changes must be shown since those judgments, in the same manner and to the same extent as if this was an application to discontinue a highway not opened to public travel.

6. To prove that a certain neighborhood, beyond the limits of the route proposed, would be accommodated by it, evidence was offered by the petitioners of the distance to Swift Water by the proposed road, and a cross road extending from it, and by the now traveled roads. The defendants denied there was any public highway over the cross route, and objected to the evidence, unless a public highway was shown there. The petitioners then offered a copy of the record of laying out of a highway in Bath, which they contended was the same. Objection was made to the record, because it is not shown to be the same road, the termini are indefinite, the road is not laid out as far as prayed for, there is no evidence of any notice or hearing, and no award of land damages.

The petition for the road last named asked for a new highway from the main road, by C. Foster's, in Bath, between land of E. Cleveland and B. Snow to their corner; thence between Cleveland's orchards, near the upper one, to the dwelling-house of E. Bacon; then, by the directest course to Wild Ammonoosuc river. The record commences: "Agreeably to the within petition, we, the undersigned, selectmen of Bath, lay out a road beginning at the road by C. Foster's; thence between lands of E. Cleveland and B. Snow; thence between the orchards of said Cleveland, as near as may be convenient to the upper one; thence in a direct course to a poplar tree, standing in or near the brook, marked H; thence eastwardly of E. Bacon's house; thence across said Bacon's land, in

nearly a direct course, as marked on trees, towards Wild Ammonoosuc river, until it strikes the line of said Bacon's land, or next lot towards the river. Said road is two rods wide. Given, &c., 26 November, 1814." The petitioners offered evidence tending to prove a public highway by dedication and use, but much conflicting evidence on this point was introduced. The main evidence was rejected.

C. R. Morrison, and Felton, for the petitioners.

H. Hibbard, and H. Bingham, for the petitionees.

BELL, J. Whittier's testimony is incompetent. Opinions are not evidence except in the case of experts; the evidence is not offered as that of an expert. It is contended he was asked as to a matter of fact, and not of opinion; that his testimony related to his intention, the existing state or determination of his mind relative to a matter where the animus was material. The answer to this view is, that his intention or determination upon the point inquired of was not material. It had no tendency to prove anything relating to the necessity or utility of the road. Intention is subject to change; and it does not follow, because a man does not now design ever to use a proposed road, that he will not use it when it has been built.

2. Butler's testimony was inadmissible. It was too remote, both in time and place. Nor does it obviate this objection that he described the routes, the nature of the ground, prices of labor, &c., because there could be no reasonable means or opportunity to verify or correct such statements, or to show the want of similarity in the case on trial and that set up by the proof. In cases occurring recently and in the vicinity, it may be supposed the means of showing the truth are within the reach of both parties. It is said this objection was waived, because the counsel, when called upon to state his objection, objected " to tes-

timony of the cost of the roads," but the objection was obviously to evidence of the costs of *those* roads, which is the objection here insisted upon. A general objection will be insufficient, where the special point of the objection insisted upon is such that if it had been specifically pointed out at the trial, it might have been obviated, or where the general objection was calculated to divert the attention from the special objection on which the party intended to rely. Here there is no pretence that the objection insisted upon is different from that taken at the trial or from that the other side must have understood to be made. *Whipple* v. *Stevens*, 22 N. H. (2 Fost.) 219.

3. The evidence of Johnson was subject to the same objection, and the same remarks apply to it.

4. The auditor's report, if stated, was mere hearsay. If produced it might or might not have been evidence. It was not offered, nor its absence accounted for. Noyes' evidence was not offered as secondary. The witness testified to a fact, of which he admitted he had no personal knowledge. His evidence was clearly incompetent. *Wheeler* v. *Blandin*, 22 N. H. (2 Fost.) 167.

5. The case raises the question whether the record of former proceedings for the laying out or discontinuance of the same road at a former time, is competent evidence, upon the hearing before the commissioners upon a petition to lay out, and if so whether the commissioners are bound to find a change of circumstances since the former proceedings, to warrant the laying out.

The rule as to the admissibility of a judgment as evidence is well laid down in *Chamberlain* v. *Carlisle*, 26 N. H. (6 Fost.) 551. " The record, when competent as evidence, binds both parties and privies; all who have a mutual or successive relationship to the same rights—privies in law, privies in blood, and privies in estate ; all who have a right to adduce testimony or cross examine the witnesses introduced by the other side ; all who have a right to defend the suit,

or control the proceedings, or appeal from the judgment. But all others are strangers, and the judgment is not conclusive upon them. It is essential to the operation of the rule, that both parties should be alike concluded by the judgment. Again, in order to make the record evidence, it must appear that the matter to be decided is the same as was settled in the former suit. The points in issue must be the same, and the judgment is conclusive only upon the matter which was directly in issue in the previous action."

Here the ·subject matter is different, and it is not suggested that the parties are the same. The question of the necessity and propriety of laying out a public highway between the same points in the present year, is not the same as it would have been five years ago. Every thing around us is changing. The course of business, as well as its amount and location, change with every season more or less, and the direction of the public travel is conformed to the wants of business. Roads once important are disused, and roads of great travel are found, where a few years since they would have been useless.

The record offered in this case was of the discontinuance of a road which did not commence nor terminate at the same points as the present, and might not pass over a single foot of the ground proposed to be occupied by the road now projected. Though regarded by the commissioners as substantially the same, it might equally, or not, accommodate the same travel, and the extension of it over the parts now omitted, or the omission of the parts now included, may have furnished reasons for the discontinuance. The road now asked for is, therefore, not the same subject matter as that to which the proposed evidence related.

It is not suggested that the petitioners then and now are the same, or that the land owners, whose lands may be taken, are the same. The towns alone remain unchanged. The evidence is offered by the towns to be weighed against

persons who were not parties to the proceedings, and consequently were not bound by them.

The evidence, then, was not admissible. If competent, it must have been conclusive ; but it was offered only that it might be weighed. But the reasoning of the court in *King* v. *Chase*, 15 N. H. 9, is entirely satisfactory to our minds, that the finding of a former jury, (and the decision of a former board of commissioners stands on the same ground,) as a mere fact, has no bearing upon the merits of a case to be tried. It proves nothing but that a former jury, upon the evidence then laid before them, arrived at a certain result. It does not tend to show that the same jury, upon the facts now in proof, would not have found the reverse.

The record is evidence, and conclusive because it is a final decision of the matter—*res judicata ;* or it is inadmissible.

There is no foundation for the argument and position that the petitioners were bound to show a change of circumstances. Many years since the court established a general rule for the guidance of committees appointed upon petitions for the discontinuance of highways laid out but not made, requiring them to set out such changes of circumstances, occurring since the laying out, as in their judgment rendered a discontinuance proper. Gen. Rule 10, Dec., 1838 ; Rule 83, of July, 1849. The motive of the rule was to make the laying out of the road conclusive of its propriety, at least until it was made ; for the effect of a petition to discontinue a road just laid out, and not made, was to re-try the precise question decided by the court upon the laying out ; and it was thought but reasonable to apply the rule, as to matters once decided, to cases of this kind, to this limited extent. The rule was made because the general law failed to reach the case. It was never applied, or supposed to apply, to cases where the application was to lay out a highway.

Where repeated applications to lay out a new road had failed, so as to give to their renewal a vexatious appearance, it was held in *Howard's Petition*, 28 N. H. (8 Fost.) 157, and *Petition of Boscawen*, 33 N. H. 421, that the Court of Common Pleas, in the exercise of their discretion, may refuse to commit a petition to the road commissioners, unless it appears that some changes of circumstances have occurred since the last hearing, which show that the new application cannot be regarded as vexatious. Reliance seems to be placed upon some expressions in the case of *Howard's Petition*, which seem to us to be misunderstood and perverted, and to lay no foundation for the argument constructed upon them.

The reports of the county commissioners, relative to the laying out or discontinuance of public highways, seem to fall among the class of public documents which are *prima facie* evidence of the facts found in them, on the general ground that whenever persons are appointed by the law, or by authority of law, to investigate any matter of fact under oath, and make a return or report upon it, the return or report is admissible, even between those who are not parties. *Seavey* v. *Seavey*, 37 N. H. 125.

So a judgment or legal proceeding is always admissible to prove itself, or that such a proceeding was had, whereever such evidence may be on other grounds admissible. 1 Gr. Ev., secs. 527, 538, 539 ; 2 Cow. & Hill's Notes 43.

But on neither of these grounds is the record here offered admissible, because the fact attempted to be proved is immaterial. It is of no consequence that former proceedings for the laying out the same road were had, and that the commissioners reported at that time either in favor of or against it. The facts and the evidence then laid before them may have been entirely different from those now in proof.

6. It was competent for the petitioners to prove that a road was usually traveled between certain points con-

Hayward *v.* Bath.

nected with their road. They might prove all or part of it to be duly laid out, or opened to the public by dedication and use, or to have become a public way by prescription, or reserved forpublic use by the proprietors of the property, or used by license of the owner. It is well known that many important roads and streets have never become public highways, though the public have the free use of them, and all the advantages they could have if they were laid out. It was not indispensable to show a highway, either laid out or gained by prescription or dedication, because the commissioners might well consider the fact that the public travel was otherwise accommodated, as having a legitimate bearing upon the propriety of laying out the road before them.

The record of the laying out of the cross road seems to have been competent, in connexion with evidence which appears to have been before the commissioners, of the long continued use of the road. The record is dated in 1814, more than forty years ago, and is in the usual form in all our towns before the publication of the Reports. It is by no means strange, considering the changes that must have occurred during that long period, that it is not shown to be identical with the road in question, that its *termini* are indefinite, or that it seems not to extend as far as prayed for.

Notice to land-owners and others, a proper award and payment of land damages, ought to be presumed from the use of the road without complaint for forty years. *Willey* v. *Portsmouth,* 35 N. H. 311.

Much of the evidence excepted to being incompetent, the

*Report must be set aside.*